UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER R. LUDWIG,

    Plaintiff,

v.                                              Case No:  2:13-cv-212-Ftm-99SPC

LIBERTY MUTUAL FIRE INSURANCE
COMPANY,

    Defendant.

_____/

## **ORDER**

This matter comes before the Court on the Plaintiff, Christopher Ludwig's Motion to Remand and for an Award of Costs and Attorney's Fees (Doc. #18) filed on April 11, 2013. The Defendant Liberty Mutual filed its Response in Opposition (Doc. # 25) on April 29, 2013. The Motion is fully briefed and now ripe for the Court's review.

## FACTS

On June 14, 2008, the Plaintiff was injured in a car accident by an uninsured motorist. The Plaintiff's uninsured motorist insurance coverage (UM) was written by the Defendant Liberty Mutual Fire Insurance Company. The Plaintiff's coverage with Liberty Mutual had an uninsured motorist policy limit of $50,000. The Plaintiff sent a demand letter to Liberty Mutual on December 19, 2008, demanding that the Defendant pay the full amount of $50,000 under his UM policy. The demand letter provided detailed information regarding Plaintiff's injuries and damages. It included an itemization of the

medical expenses incurred by Plaintiff up to that date, totaling $112,333.71. At that time, his lost wages to date totaled $16,315.20. On January 20, 2009, after Defendant had failed to pay Plaintiff's UM claim, Mr. Scheiner filed a Civil Remedy Notice of Insurer Violation ("CRN") alleging that Defendant had committed bad faith and unfair trade practices by failing to pay the claim.

After Defendant subsequently failed to pay Plaintiff's UM claim, Plaintiff commenced this action on April 10, 2009, by filing a Complaint in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. (Doc. 2). Count I alleged a claim for UM benefits, and Count II alleged a claim of statutory bad faith and unfair claim settlement practices under Fla. Stat. § 624.155, based on Defendant's failure to pay the UM benefits demanded in December of 2008.

On May 11, 2009, Liberty Mutual filed a Motion to Dismiss Count I and to stay or abate Count II for bad faith with the Circuit Court. The Circuit Court denied the Motion to Dismiss Count I, but granted the Motion to abate Count II until Count I was resolved. On June 15, 2009, Liberty Mutual sent the Plaintiff's Counsel a check for $50,000 covering the policy limits for the Plaintiff's UM claim under Count I.

After three years of further discovery and litigation, Defendant filed a motion entitled, "Liberty Mutual's Motion to Dismiss or, Alternatively for Summary Judgment as to Count I (UM); and Alternatively, Motion for Reconsideration of Order Staying Count II (Bad Faith)." This motion moved the State Court to dismiss Count I, or enter summary judgment for Defendant on Count I, on the ground that Plaintiff's claim for UM benefits was rendered moot by Defendant's payment of the policy limit. It argued there was no reason to empanel a jury to decide the issues of the tortfeasor's liability or the extent of

Plaintiff's damages because all contractual benefits had been paid. It further argued that Defendant's payment of the UM claim was a confession of judgment as to Defendant's liability for UM benefits.

As alternative relief, Defendant's motion requested the State Court to reconsider its previous order staying Count II and to instead dismiss Count II as premature, but only if it did not dismiss Count I or grant summary judgment on Count I. The State Court heard argument on Defendant's motion on February 15, 2013. Plaintiff's counsel conceded that Count I could be dismissed, provided that Defendant would send another check for the policy limits (the initial check was never negotiated) and the court reserve jurisdiction over the issue of fees and costs. The State Court ruled that it would dismiss Count I, but reserve jurisdiction over the issues prevailing party costs and attorney's fees, as well as reserving jurisdiction to enforce Defendant's obligation to send a new check.

Finally, on March 6, 2013, after nearly four years of litigation, the state court entered an order dismissing Count I and denied the motion to dismiss Count II. The Defendant subsequently removed the case to Federal Court on March 15, 2013.

DISCUSSION

The Plaintiff now moves the Court to remand to the Twentieth Circuit because the removal to this Court was untimely filed. The Defendant argues that Count II for Bad Faith did not become ripe until March 6, 2013, when Count I was dismissed, and therefore, the removal on March 15, 2013, was timely filed.

The removing party has the burden of proving that federal jurisdiction exists by a preponderance of the evidence and the removing party must present facts establishing

3

its right to remove. Bolen v. Illinois Nat. Ins. Co., WL 4856811 *2-4 (M.D. Fla. August 28, 2012) (citing Williams v. Best Buy Company, Inc. 269 F.3d 1316, 1319 (11th Cir.2001)). When the defendant fails to do so, the case must be remanded. Williams, 269 F. 3d at 1321.

"Removal of state court actions to federal court involves both jurisdictional and procedural considerations." Bolen, 2012 WL 4856811 at *2-4 (quoting Lowery v. Ala. Power Co., 483 F.3d 1184, 1194 (11th Cir.2007)). "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441. Here, Defendant removed the action allegedly under the Court's diversity jurisdiction. A district court has original jurisdiction over cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Federal jurisdiction pursuant to 28 U.S.C. § 1332 exists only when there is complete diversity between the plaintiffs and the defendants and the amount in controversy requirement is met. See Owen Equip. and Recreation Co. v. Kroger, 437 U.S. 365, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978).

Procedurally, removal is governed by Title 28 U.S.C. § 1446. The removal provisions of Title 28 were among the provisions amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011 ("the Act"), effective upon the expiration of the thirty (30) day period beginning on December 7, 2011.

The Plaintiff argues that the 2009 version § 1446 of the Removal Statute applies to this case while Liberty Mutual argues that the version issued after the Act was passed is the proper version that governs the case.  However, in this instance the initial removal took place after the Act was passed and therefore, the 2012 version of the Removal Statute is what applies.  At the time of the instant removal, the statute provided:

> (1)The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1) (2012).

> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b)(3) (2012).

> (c) Requirements; removal based on diversity of citizenship.-(1) A case may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.

28 U.S.C. § 1446(c)(1) (2012).

Removal statutes are to be strictly construed against removal. Bolen, 2012 WL 4856811 at *3 (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108, 61 S. Ct. 868, 85 L. Ed. 1214 (1941)); Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994) ("[R]emoval statutes are construed narrowly; when the parties dispute

5

jurisdiction, uncertainties are resolved in favor of remand."). Any doubt as to proper subject matter jurisdiction should be resolved against removal. Bolen, WL 4856811 at *2-4 (citing Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir.1979)).  With these principles in mind, the Court will evaluate the propriety of Liberty Mutual removing the case to Federal Court.

The issue here is whether or not the bad faith claim in Count II commence/accrued before the removal deadline expired under § 1446(b).  If, as Liberty Mutual argues, the action for Count II commenced on March 6, 2013, after Count I was dismissed, then the removal is timely and the case should stay in this Court.  However, if the Plaintiff is correct and Count II commenced/accrued when the case was originally filed in 2009 then the action was improperly removed from the State Court and the action must be remanded under 28 U.S.C. § 1446.

Florida law provides that a claim for bad faith shall not accrue until there has been a determination of liability and damages. See Blanchard v. State Farm, 575 So.2d 1289, 1291 (Fla.1991) ("an insured's claim against an uninsured motorist carrier for failing to settle the claim in good faith does not accrue before the conclusion of the underlying litigation for the contractual uninsured motorist benefits. Absent a final determination of the existence of liability ... and the extent of the plaintiff's damages, a cause of action cannot exist for a bad faith failure to settle.").  And yet, despite this clear finding that bad faith claims cannot be prosecuted prior to their accrual, Florida courts, in practice, *routinely allow* for the filing of such premature claims. Such claims are either, as here, pled along with the underlying insurance claim and allowed to stand subject to stay or abatement, or allowed as an amendment to the original complaint,

6

months or years later. Bolen, 2012 WL 4856811 at *5 (emphasis in original). This is, apparently, a peculiarity of state law. See, e.g., Landmark American Ins. Co. v. Studio Imports, Ltd., Inc., 76 So.3d 963, 964–5 (Fla. 4th DCA 2011) ("The trial court can decide to either dismiss the bad faith claim without prejudice or abate the claim until the underlying breach of contract issue is resolved."); Vanguard Fire and Cas. Co. v. Golmon, 955 So.2d 591, 595 (Fla. 1 st DCA 2006) ("Although we take no legal action other than to quash the order under review, we point out that the trial court has authority to abate the statutory claims, rather than to dismiss them, if it appears to the court that abatement would be in the interest of judicial economy."); O'Rourke v. Provident Life and Acc. Ins. Co., 48 F.Supp.2d 1383, 1385 (S.D.Fla.1999) (abating, rather than dismissing, bad faith claim, noting: "In recent years, ... Florida courts have moved toward the greater use of abatement as a mechanism for delaying the adjudication of matters that have not yet become ripe."). This practice presents several conceptual and practical difficulties in the removal context.

If a plaintiff chooses to include the inchoate bad faith claim in his original complaint, it is part of the "case" in determining the amount in controversy? Most federal courts have said no, finding that removal is premature. Bolen, 2012 WL 4856811 at *3. But why is this claim any different from a claim for statutory attorney's fees which cannot be pursued until a plaintiff prevails on the merits of an underlying claim? In both cases, a plaintiff has a claim that may or may not ripen into an actionable claim. Id. By allowing the unaccrued claim to remain pending, Florida courts have treated it as part of the original case clouding the removal analysis. Id. Because a bad faith claim asserted prior to its accrual is deemed to be premature, courts in this district have rejected

attempts to remove them. See Jenkins v. Allstate, Ins. Co., 2008 WL 4934030 at *2 (M.D. Fla. November 12, 2008) ("... until a final judgment is entered [in the UM claim], the bad faith claim does not exist, and therefore, there is nothing to remove even though a bad faith claim may be considered a separate and independent claim that is subject to removal separate from the underlying UM claim."); Curran v. State Farm Mutual Insurance Company, 2009 WL 2003157 (M.D. Fla. 2009).

Moreover, if a plaintiff chooses (and the state court permits) a post judgment amendment to the original complaint to assert a bad faith claim, rather than pursuing it in a separate action, how should a federal court apply the one year outside time limit on removal?  If, as urged by Liberty Mutual, the amendment is treated as a new "case," then the Defendant has plenty of time in which to remove.  However, just as with the abatement practice, this would distort what "case" means and ignore the particulars of Florida practice and procedure. Bolen, 2012 WL 4856811 at *5.  It is state law that creates and defines this cause of action, and it is the province of the state courts to establish acceptable procedures for the definition and prosecution of "cases." Id.  This, belated assertion of the claim in the original action is problematic for Federal Courts. Id.

Here, Liberty Mutual argues that an action for bad faith (Count II) did not commence until there was determination of the insurer's liability on the UM claim and the State Court dismissed Count I regarding liability for the UM claim.  The Court's in the Middle District are split on how to handle the removal of bad faith claim arising from a UM claim and to date there is no binding precedent from the Eleventh Circuit.  Liberty Mutual relies heavily on Lahey v. State Farm Mut. Aut. Ins. Co., 2007 WL 2029334

8

(M.D. Fla. July 11, 2007), and Barnes v. Allstate Ins. Co., 2010 WL 5439754 (M.D. Fla. December 28, 2010).

The Lahey Court held that a bad faith claim is a separate and distinct cause of action and a defendant is not precluded from filing its notice of removal more than one year after the original UM claim was filed because the bad faith claim is a separate action. Id. at *1-2. However, in Lahey, the plaintiff amended its action adding the bad faith claim after he had filed his initial UM claim. The Lahey Court held that the removal was timely because the case was removed within thirty (30) days of the defendant receiving a copy of the amended pleading setting forth the bad faith claim. Id. at * 2. Thus, the facts in Lahey are distinguishable from the facts in this case since the bad faith claim was added and the case removed within the time constraints contained in § 1446(b).

The Barnes Court followed the Lahey Court's decision. In Barnes, the plaintiff amended his complaint on February 6, 2009, adding a bad faith claim to the UM claim. However, the defendant insurer did not remove the bad faith claim until after the Second District Court of Appeals had decided the appeal on the underlying UM claim on October 8, 2010, over a year and a half after the amended complaint was filed. The Barnes Court held that even though the thirty (30) day deadline to remove had passed since the complaint was amended, adding the bad faith claim, the removal to federal court was timely because the bad faith claim did not accrue until after the Second District Court of Appeals had decided the appeal on the underlying UM claim.

However, there is authority in both the Middle and Southern Districts of Florida that contradict the holdings in Lahey and Barnes. See Bolen, WL 4856811

9

*7(remanding the bad faith claim to State Court as untimely filed because the bad faith claim was abated rather than dismissed and allowed to remain a part of the case for almost four years); Moultrop v. GEICO General Ins. Co, 2012 WL 1432316 (S.D. Fla. April 25, 2012) (rejecting the contention that for removability purposes, the bad faith action commenced after plaintiffs filed their amended complaint in state court and the underlying judgment on the UM contract claim became final through exhaustion of appellate remedies, "thereby resetting § 1446(b)'s one-year repose period"); ( Potts v. Harvey, 2011 WL 4637132, *3 (S.D. Fla. Oct.6, 2011) (rejecting the "new and separate claim" analysis); Franck v. State Farm Mut. Auto Ins. Co., No. 6:11–cv–1422–Orl–22KRS, Doc. 19 (M.D. Fla. Oct. 21, 2011) (applying the one year time limit and remanding the case).

As noted above, the issue in this case depends on Florida's UM pleading practice as countenanced by Florida's State Courts. The instant case is almost identical to the case cited above, Bolen v. Illinois. In Bolen, like here, the Plaintiff sued the insurer in a two count Complaint alleging state law claims for uninsured motorist coverage (Count I) and for statutory bad faith (Count II). 2012 WL 4856811 at *1. The Bolan Court found that the statutory one year deadline for removal had expired because the State Court abated the bad faith claim in Count II pending the resolution of the UM claim in Count I rather than dismissing the bad faith claim. As such, the bad faith claim remained an active part of the case in controversy. Id. at *7. Thus, when the defendant attempted to remove the case in 2012, the Bolen Court found the claim had accrued more than one (1) year earlier and the removal was untimely. Id.

The instant case was originally filed in State Court on April 10, 2009, and was removed to this Court on March 15, 2013. Here, just like the Bolen case, the bad faith claim (Count II) was abated and not dismissed. Although the bad faith claim was abated during the pendency of the UM claim, it was clearly allowed to be part of the case and thus, under Florida law, was commenced upon filing in April 2009. Id. at *7. The Court finds the reasoning in Bolen to be the more persuasive and therefore, concludes that the bad faith claim accrued when the case was initially filed in April of 2009. See Franck v. State Farm Mut. Auto Ins. Co., No. 6:11–cv–1422–Orl–22KRS, (Doc. 19) (M.D. Fla. Oct. 21, 2011) (applying the one year time limit and remanding the case in a case of bad faith insurance claim removed after the UM claim was resolved). Thus, the removal on March 15, 2013, was untimely and the case is due to be remanded to the Twentieth Judicial Circuit Court in and for Lee County, Florida.

(2) *Attorney's fees and Costs*

An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). As is clear from the statutory language, an award of attorney's fees under this provision is discretionary. Bolen, WL 4856811 at *3 (citing IMCO USA, Inc. v. Title Ins. Co. of Minn., 729 F. Supp. 1322, 1324 (M.D.Fla.1990)). In Martin v. Franklin Capital Corporation, the United States Supreme Court held that "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." 546 U.S. 132, 141, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005). Applying the standard set forth in Martin, there is no basis for the Court to find that Defendant acted unreasonably or in

bad faith in removing this case, particularly given the conflict in authority regarding removal of similar claims in this district. Thus, the Motion for fees and costs is due to be denied.

Accordingly, it is now

**ORDERED:**

The Plaintiff, Christopher Ludwig's Motion to Remand and for an Award of Costs and Attorney's Fees (Doc. #18) is **GRANTED in part and DENIED in part.**

- The Plaintiff, Christopher Ludwig's Motion to Remand is **GRANTED** and the case is **REMANDED** to the Circuit Court for the Twentieth Judicial Circuit in and for Lee County, Florida.
- The Plaintiff, Christopher Ludwig's Motion for an Award of Costs and Attorney's Fees is **DENIED**.

**DONE** and **ORDERED** at Fort Myers, Florida, this 3rd day of June, 2013.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record